CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
RW
JUL 07 2008
JOHN F. CORCORAN, CLERK
BY: HMcOcnaQ
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES D. ROBERTS, ) | |
| Plaintiff, ) | Civil Action No. 7:08cv00372 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TERRY O'BRIEN, et al., ) | By: Hon. Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |

Plaintiff James D. Roberts, Federal Register No. 60560-066, a federal inmate in custody at United States Penitentiary Lee County ("USP Lee"), in Jonesville, Virginia, filed this pro se civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested pursuant to 28 U.S.C. §1331. For the reasons that follow, plaintiff's complaint will be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which the court may grant relief.[1, 2]

I.

Plaintiff states that, while he has been administratively held in the segregated housing unit ("SHU") at USP Lee, he has been denied "the right to receive and retain magazines and newspapers." In his view, the applicable regulation violates his right to due process. In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

[2] The facts have been adduced from the complaint and the documents submitted in support thereof.

unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges[3] [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Further, prisoners do not have a constitutionally recognized liberty interest in a

---

[3] For example, the privilege plaintiff asserts in the instant case, i.e., to receive newspapers while being held in administrative segregation. Prisoners retain those rights which are not inconsistent with their status as prisoners or with legitimate penological objectives, and prison practices that impinge upon a prisoner's rights with respect to mail must be reasonably related to a legitimate penological interest. See Hudson v. Palmer, 468 U.S. 517, 523 (1984); Altizer v. Deeds, 191 F.3d 540, 547 (4th Cir. 1999) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)) (a prison policy that impinges on an inmate's constitutional right is valid "if it is reasonably related to legitimate penological interests"). Bureau of Prison ("BOP") regulations permit Warden O'Brien to restrict the amount of personal property that a prisoner may retain in the SHU based on reasons of security, fire safety, or housekeeping considerations. 28 C.F.R. § 541.22(d); see also Turner, 482 U.S. at 89 (establishing a four-factor analysis for determining the constitutional validity of prison regulations). Additionally, the practice of limiting reading materials during such segregation, pursuant to 28 C.F.R. § 541.21(c)(8), bears a "valid, rational connection" to the legitimate governmental interest in deterring and punishing misbehavior, because permitting inmates whatever reading materials they desire would eliminate one of the punitive aspects of disciplinary segregation. See Turner, 482 U.S. at 89 (internal quotation marks omitted); see also Maydak v. United States, 98 Fed. Appx. 1 (D.C. Cir. April 20, 2004) (rehearing denied June 23, 2004) (plaintiff's claims failed "because he . . . alleged no facts showing that [the] BOP had any duty to deliver newspapers to him while he remained in disciplinary segregation").

To the extent plaintiff alleges that he has been denied the right to possess "commercially available" or "commercially distributed" photographs because the Warden has determined that by the nature of the content, the photographs poses a threat to personal or institutional safety and security; or that they pose a threat to the security, discipline, and good order of the facility; or preapproval was not obtained by the inmate, the claim must fail. See, e.g., Henderson v. Commonwealth of Virginia, et al., Civil Action No. 7:07-cv-00266 (W.D. Va. March 25, 2008) (legitimate penological interest in preventing barter, and plaintiff did not attempt to obtain pre-approval); Torres v. Johnson, et al., Civil Action No. 7:07-cv-00398 (W.D. Va. August 31, 2007) (same; "[r]especting 'the determinations of prison officials,' United States v. Stotts, 925 F.2d at 86, the court finds that the [regulations] at issue here are 'reasonably related to legitimate penological interests,' Turner v. Safley, 482 U.S. at 87"), appeal dismissed as frivolous by Case No. 07-7340 (4th Cir. May 20, 2008). The Warden has a legitimate penological interest in preventing the bartering of commercial photographs, and plaintiff does not allege that he attempted to obtain pre-approval to receive the photographs. Furthermore, plaintiff's submissions to the court indicate that he received appropriate notice and a reasonable opportunity to challenge the decision to deny his request to purchase the photographs. See Hopkins v. Collins, 548 F.2d 503 (4th Cir. 1977). Accordingly, any due process claim implicated by plaintiff's allegation concerning "commercially distributed" photographs must be dismissed.

particular security classification nor a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976). In order for plaintiff to prevail on his due process claim, he must show that his punishment was not "within the normal limits or range of custody which the conviction has authorized the [BOP] to impose." See Sandin, 515 U.S. at 478 (quoting Meachum, 427 U.S. at 225).[4] Plaintiff fails to make this showing.[5] Therefore, the court finds that plaintiff has failed to state a claim of constitutional magnitude as to his due process claim.

## II.

Plaintiff asserts that "some" inmates – but not he – "are being housed illegally in holding cells and the SHU law library," "some" of whom are "without a bed," "have no toilet or running water," or do not have a shower. To the extent plaintiff alleges a living conditions claim, the claim must fail. To establish an Eighth Amendment living conditions claim, plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While the conditions for "some" inmates at USP Lee may be uncomfortable, plaintiff has not alleged anything to suggest that these conditions violate contemporary standards of decency.[6] Nor has he demonstrated that, because of the conditions, he

---

[4] In certain circumstances not present here, such as when an inmate is faced with loss of statutory good-time credits or solitary confinement, some additional protections may be available. Wolff v. McDonnell, 418 U.S. 539, 564-71 (1974).

[5] See n. 3, supra.

[6] Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate (continued...)

3

personally has sustained a serious or significant injury or is at risk of a future injury. Therefore, plaintiff fails to state a constitutional claim under the Eighth Amendment.

### III.

Plaintiff asserts that, because inmates have been housed occasionally in the SHU law library, the SHU law library has sometimes been unavailable to SHU inmates. In plaintiff's view, this denies him "and all SHU inmates[] access to legal materials to prepare for disciplinary, civil, or criminal case [sic] [and] thus in effect denies us fair access to the Courts." Reasonable access by prisoners to both state and federal courts is a guaranteed right. Ex parte Hull, 312 U.S. 456 (1941); see Procunier v. Martinez, 416 U.S. 396 (1974). Prisons must affirmatively provide inmates with either law libraries or persons trained in law to prosecute habeas and civil rights claims. See Bounds v. Smith, 430 U.S. 817, 828 (1977). In other words, access to a law library is required only in the absence of legal assistance. To state a claim of a violation of this right, a prisoner must show some interference with his right or some deficiency in the legal resources available to him, as well as evidence of actual injury or specific harm related to litigation. Lewis v. Casey, 518 U.S. 343, 351 (1996) (finding that when an inmate has had access to court, but alleges that officials deprived him of some item necessary for meaningful pursuit of his litigation, such as his already prepared legal materials, the inmate must allege facts showing actual injury or specific harm to his litigation efforts

---

[6](...continued)
is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). And, as the court has already observed, the plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler, 989 F.2d at 1380-1381; Helling, 509 U.S. 25.

4

resulting from denial of the item). Plaintiff alleges that he has been denied access to a law library. However, he has failed to allege any facts which suggest that this alleged denial has caused him any actual injury or specific harm. Further, plaintiff's filing of the instant action suggests that his ability to correspond with the courts has not been hindered. Accordingly, the court finds that plaintiff fails to state a claim of inadequate access to legal assistance, and will dismiss this claim.

## IV.

To the extent plaintiff alleges that he has been denied access to the administrative remedies system, inmates do not have a constitutionally protected right to participate in a grievance procedure. Brown v. Dodson, 863 F. Supp. 284 (W.D. Va. 1994); see also Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal regulations providing for administrative remedy procedure do not in and of themselves create liberty interest in access to that procedure). Under these principles, plaintiff has no actionable claim regarding defendants' responses to his grievances or their administration of the grievance process.[7]

---

[7] The court notes that plaintiff admits that he has failed to exhaust all available administrative remedies; he alleges that prison administrators deprived him of access to the grievance procedure by requiring him to properly comply with the prescribed steps of the process. The Prison Litigation Reform Act requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions. 42 U.S.C. § 1997e(a); see also, Dixon v. Page, 291 F.3d 485 (7th Cir. 2002), citing Perez v. Wisconsin Dept of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to exhaust even if the inmate demonstrates that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit). The exhaustion requirement "applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedy procedures for purposes of § 1997e(a) means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. See, e.g., Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2385-88 (2006). Section 1997e(a) applies whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion provision is mandatory, even in those instances where an inmate claims that exhaustion would be futile or the remedy inadequate. Id. n.6.

Pursuant to 28 C.F.R. § 542.10, et seq., the BOP has established an administrative remedy procedure through which an inmate may seek a formal review of an issue or complaint relating to his confinement. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within twenty calendar days of the date of the occurrence on which the complaint is based. See 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using
(continued...)

## V.

Based on the foregoing, the court will dismiss plaintiff's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which the court may grant relief.[8, 9, 10]

---

[7](...continued)
the appropriate form, to the Regional Director within twenty calendar days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Director's response to the Office of the General Counsel, located in the BOP Central Office in Washington, DC, using the appropriate forms. The inmate must file this final appeal within thirty calendar days of the date the Regional Director signed the response. See id. An inmate is not deemed to have exhausted his administrative remedies until he has pursued his grievance through all levels. See 28 C.F.R. § 542.15(a). Indeed, several circuit courts of appeals have held that the failure to timely file an appeal with the General Counsel is a procedural default. See, e.g., Moscato v. B.O.P., 98 F.3d 757, 760 (3d Cir. 1996) (a prisoner's "failure to satisfy the procedural rules of the Bureau's administrative process constitutes a procedural default").

[8] Regarding plaintiff's request for injunctive relief, a district court should issue preliminary injunctive relief only sparingly, using the "balance of hardship" test. In applying this test, the court should consider four factors: 1) whether the plaintiff will suffer immediate and irreparable harm if the relief is not granted; 2) the likelihood of harm to the defendants if relief is granted; 3) the likelihood that plaintiff will eventually succeed on the merits; and 4) whether the public interest lies with granting the relief. Wetzel v. Edwards, 635 F.2d 283, 286-87 (4th Cir. 1980) (citing Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing, Co., 550 F.2d 189, 195 (4th Cir. 1977)). Functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Courts should grant preliminary injunctive relief involving the management of prisons only under exceptional and compelling circumstances. Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994). Without a showing that plaintiff will suffer imminent, irreparable harm, the court cannot grant interlocutory injunctive relief. Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991). The plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Group, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Given that plaintiff's allegations do not appear to state any constitutional claim, plaintiff has not established a likelihood that he will eventually succeed on the merits or that the public interest lies with granting the relief. Plaintiff has not alleged facts indicating that he will suffer immediate and irreparable harm in the absence of interlocutory injunctive relief of some kind. Accordingly, plaintiff's request for injunctive relief does not satisfy the "balance of hardships" test, and must be denied.

Insofar as plaintiff's request for injunctive relief could be construed as a request for a temporary restraining order, such orders are issued only rarely, when the movant proves that he will suffer injury if relief is not granted before the adverse party could be notified and have opportunity to respond. See Fed. R. Civ. P. 65(b). Such an order would be effective only until such time as a hearing on a preliminary injunction could be arranged. As it is clear at this juncture that plaintiff has stated no claim of constitutional significance, and is not entitled to a preliminary injunction, the court finds no basis upon which to grant him a temporary restraining order.

[9] Federal law provides that a prisoner may not bring a civil action without complete prepayment of the appropriate filing fee if the prisoner has brought, on three or more occasions, an action or appeal in a federal court that was dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. See 28 U.S.C. §1915(g). Plaintiff is hereby advised that the dismissal of the instant complaint constitutes a "strike" under §1915(g). Plaintiff has also filed
(continued...)

6

The Clerk is directed to send a certified copies of this memorandum opinion and the accompanying order to plaintiff.

**ENTER**: This 7th day of July, 2008.

*/s/ Jackson L. Kiser*
Senior United States District Judge

---

⁹(...continued)
another complaint in this court regarding the same claims presented in this case. See <u>Roberts v. O'Brien, et al.</u>, Civil Action No. 7:08-cv-00388. The documents filed in Civil Action No. 7:08-cv-00388 have been reviewed in the consideration of the instant case. Civil Action No. 7:08-cv-00388 will be administratively closed, and will not be used to calculate a "strike" under §1915(g).

¹⁰ Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Civil Procedure by filing a notice of appeal with this court within thirty (30) days of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) or 4(a)(6).

7